519-0339 Mitchell-Roberts Partnership, et al. v. Williamson Energy, LLC, et al. Arguing for the appellants, Mitchell-Roberts Partnership, et al. is Mark Johnson. Arguing for the appellees, Williamson Energy, LLC and Colt, LLC, is Joshua Hammock. Arguing for the appellees, Independence Land Company, LLC and WPP, LLC, is John Rhine. You will see the digital timekeeping device on my screen. Each side will have up to 20 minutes for your argument. The appellant will also have five minutes for rebuttal. The two appellees have agreed to split their time, 15 minutes and five.  Are we ready? Yes. Counsel for the appellant may proceed. Yes, Your Honor. May it please the court? This is Mark Johnson for the plaintiff appellants, Mitchell-Roberts Partnership, et al. This case involves a construction of a series of deeds that we labeled on our brief, the Pierce Deeds. The more precise question, however, is whether or not subjacent and sublateral support, sometimes referred to in the briefs by parties as subsidence rights, were conveyed by Roberts to Pierce on all 127 parcels and the deeds are in just 12 parcels. Roberts is the predecessor entitled to the plaintiffs and Pierce is the predecessor entitled to the defendants. It's the plaintiff's position that because of the way the subsidence rights were interspersed throughout the deeds, that subsidence, which is subjacent sublateral support, was only conveyed in 12 of those 127 parcels. Counsel, are these 12 parcels, are they contiguous or are they scattered? Yeah, they're scattered, Your Honor. They're not contiguous properties. And they're scattered throughout the deed as well, Justice Overstreet. They're not touching each other, contiguous in that respect, but in Pierce Deed A, for example, one of the subsidence clauses shows up in parcel 67, one in 75, 76, and then at 77, I think, and then 83. So, they're not contiguous in any respect. Thank you. All right. Since this is an appeal for my motion, partial summary judgment, and because it involves the construction of a deed, this court's review, as the court, I'm sure, is well aware, and it's based on a brief, is de novo. The situation here is, if there is no ambiguity in the Pierce Deeds, then our Supreme Court and Air Safety has established a bright line that prohibits the use of parole evidence. Now, every part of this litigation, even the trial court, found that the Pierce Deeds were not ambiguous. Consequently, under the instruction of the Supreme Court and Air Safety, the Four Corners Rule must be invoked to determine what the construction of the Pierce Deed shall be. And a quick quote from Air Safety says that the document must be presumed to speak the intention of the parties who signed it. It speaks for itself, and the intention with which it was executed must be determined from the language used. It's not to be changed by extrinsic evidence. Now, in this situation, the plaintiffs have three dispositive points for the plaintiff's claim to construction that only subsides and is applied to only the 12 parcels at issue. Any one of those three, we contend, is sufficient to sustain the plaintiff's claim to construction. The first dispositive point is the age-old rule that meaning and effect must be given to each provision or clause in the contract, or in this case, the Pierce Deeds. Now, there are two parts to that. The first one is that it is presumed that a clause was asserted deliberately in a document for a specific purpose. And secondly, the court will adopt a construction that gives effect to the whole instrument, but that each word and term has to have meaning and effect, and you cannot reject any provision or word as meaningless, repugnant, or mere surplusage. Now, it's our position that our construction gives meaning and effect to each of those subsidence clauses. And I'll use Pierce Deed A as an example because it's the biggest. It contains 83 parcels, or five subsidence clauses scattered throughout. And I just saw that it's parcel 67, 75, 76, 77, and 83. Our contention is that they modify the immediately preceding parcel, because to look at that any other direction, you would have to call for the five subsidence clauses mere surplusage. They had to be inserted for a reason. The reason was they have to immediately modify the immediately preceding parcel. The defendant's claim of construction would basically have the court ignore four of the five subsidence provisions of Pierce Deed A. That brings me to the second point, which is also joined in some respects to this argument and is also dispositive, and that's the structure, organization, placement, and the words used. With respect to two particular causes, one being the reservation of oil and gas, and the other one being about Homestead. If you look at Pierce Deed A, and we've attached it in our appendix, if you look at the end of the document, what it says is at the very end, where you would expect Homestead to be, it says, first paragraph at the end, it says, the grantors hereby reserve all oil and gas for the service of real estate, above described in parcels 1 through 83, both inclusive. Then the next paragraph is at the end, it says, and the grantors hereby release away all of their rights under and by virtue of the Homestead exemption laws of the state of Illinois, and into all the coal underlying the lands, herefore described in parcels 1 through 83, both inclusive, again. So it's clear that the drafter of the Pierce Deeds knew very well how to apply a particular provision or cause, like Homestead and oil and gas in this case, to all 83 parcels. So therefore, the insertion of the additional four subsidence clauses throughout the Pierce Deed A had to have a meaning other than just applying it to all the parcels. And that is supported by the structure itself, which says that those parcels had to have that relevance in the conveyance. Otherwise, you would have to ignore those four parcels. Council, as we interpret, if we look at the four corners, does common sense come into this? Yes, sir. Yes, sir, it does. How is it commonsensical then to have just 12 parcels, convey 127 parcels, but only in 12 of those parcels, the right to mine and remove deep coal is granted? And like I said, they're scattered. How does that make sense? Well, I'll tell you how it makes sense, Judge. It makes sense because just this right of subsidence on these five parcels in Pierce Deed A doesn't mean they can't room and pillar mine all of it. I think that may be where the confusion is here then, based on that question, Your Honor. Look, if they have the right to room and pillar, which they do, all they have to do is provide sublateral subjacent support. So they can go under the ground, take out all the coal that they want by room and pillar, maintain the shallow coal that our people own, and make it free of subsidence. It makes sense that they chose these five particular parcels, for some reason, to be only applicable to subsidence which weighs all right of damage, which would be important for, for instance, longwall mining. Longwall mining has plant subsidence. You would need those five parcels to apply to all 127 in order for the defendants here to be able to mine without liability to the plants. So, and the other part of the common sense is, it makes no sense that Roberts would convey the deep coal, keep the shallow coal, but give the right to destroy all the shallow coal by conveying the right to subside without liability on all 127. What he did, more importantly, was only give it to five parcels. And I'm back to the, what I still think is the most dispositive thing is, you just have to totally ignore those other four subsidence clauses to reach the construction profit by the defendants, and that's contrary to the Supreme Court's indications in air safety. And the last point, Your Honor, point number three also confirms it, and that's the application of the last antecedent rule. And that's where relative and qualifying words necessarily modify those words or phrases, which immediately precede them and not those that are more remote. So subsidence here was meant to scatter throughout these deeds to have some effect. Why in the world would they, would they put one at 67 and an 83 and 77? It had to mean it was immediately qualifying the parcel right in front of it. And particularly when you think at the end of that document, they knew how to make everything applicable. If you took the defendant's point of view, there would only be one subsidence waiver at the end, just like there is with oil, gas, and homestead. And when you, when they chose to put four more in scattered throughout the document, it's therefore clear that they had to have a particular meaning and they were deliberately placed there for some important reason, which was to modify an immediately preceding parcel, or otherwise they would have said it applied to all, like they did with homestead and normal gas. Counsel, what about the Pierce Amendment? How does that affect, because it seemed like the Pierce Amendment affected, you know, the surface option, I guess, on various parcels, but it wasn't necessarily at the end, you know, not necessarily on the parcels, on just these 12 parcels. Yeah, so there are two, that's one of two pieces of parole evidence that the defendants are trying to obfuscate this court, the argument under the Four Corners Rule. That amendment is simply parole evidence, just like the source deeds are. The defendants have conflated the rule that permits parole evidence in an unambiguous document when you're looking to modify it for purposes of mistake, fraud, things like that. That's not permissible under the Supreme Court's Four Corners Rule, which means it's a right line. You can't put that kind of parole evidence in. There's also additional reasons why that particular document is not persuasive here. First of all, it reports to modify the original contract, which is dated back in July of 2012. Nobody's been able to find that contract. It's not an effort to modify the Pierce deeds. It also mentions that it's about modifications of parole, so there's likely other modifications based on that use of the parole in that amendment that we cannot find as well. The most important thing, though, is it didn't modify subsidence. It only modified a surface option. And finally, that document's a nullity. The dates are important. The original contract was July 20, 2012. The Pierce deeds were issued on March 7. I'm tired of Pierce D-Day now. Pierce D-Day was issued on March 17, 2013. And then Pierce conveyed it a way to guarantee trust shortly thereafter. And then that modification didn't occur for about six months in September of 2013. So the parties of that modification did not even have an interest in the real estate at that time. So that document could not, even if it could get by the hurdle of being improper parole evidence, cannot be used to modify the Pierce deeds. The other thing that's important is the Supreme Court tells us that we cannot speculate about, this court cannot speculate about what the parties thought something meant. And that's part of the problem. The defendants are stuck with a plain reading of this document. You look at the four corners, they can't explain why there's four other society's waivers in the Pierce deeds. So they've attempted to do so with parole evidence, and that's not permissible if the document's unambiguous. Like I said, there are exceptions. If they had pled mistake of fact or had tried to reform or rescind the Pierce deeds, but no such pleading has been filed in this case on behalf of the defendants. And they've not raised it in the trial court either. I do want to touch, briefly judge on a couple other issues that the defendants raised. One being that its subsidence is a covenant that runs with the land, somehow pertinent to the cult. There is no authority for either of those statements in the state of Illinois that we can find. They've cited the Corcoran case for authority on a covenant running with the land, but they left out, and I'm given the benefit of the doubt by oversight or whatever. They left out the important term, which was it only runs with the land on the surface, not on the various mineral states. This is a different circumstance. Most of the time, as the court may know, you've got a service owner that conveys the mineral. So you just have two competing interests. You've got a service owner, and you've got a mineral owner. But in this case, we have two mineral owners. Our clients have the shallow cult, and the defendant's clients have the deep cult. And then the service owners, obviously, have the soil on the top of the stratum. And in that situation, it's clear that a covenant running with the land on the surface continues. But there's no such law in the state of Illinois that says that right of societies somehow runs as a covenant with the land with a title to the cult. In fact, it's the opposite, the Marquette case. And we've also signed Pennsylvania authority to make that very clear that the right of societies, to cite Lloyd and Williams, which are Illinois Supreme Court cases, that say the right of subjacent sublateral support is absolute and without condition. And it's to be strictly construed, and so that its intention has got to be clear by the language used. And they used that clear language, Justice Overstreet, in those five paragraphs scattered throughout Pierce v. A. They did it. So they can mine, longwall mine, whatever they want, destroy the surface and collapse our 125 feet of shallow cult in those five parcels in Pierce v. A. But they cannot do that with the other parcels unless that subsidence right was somehow granted in all 83 parcels. And it simply could not be because they knew how to deal with homestead and oil and gas, and they chose not to on subsidence when they put five throughout that document. They had to mean something. To ignore it would ignore the basic common sense approach to how this thing was structured. The other thing is, you know, there's some argument in the finish brief about necessary implications itself. They claim they can't ventilate, they can't drain their mine. There's a question with railroads and things like that. We've addressed all those in the brief. Obviously, there's a right and a domain for a coal owner that was in existence since 1874. If they own the mineral, they also own the void, so they have the right to vent and transport the coal. And they also made a statement about we can't underground mine shallow coal. We've cited cases in Illinois where that is a fact of what has been done. And can you remind me again, what can they do about the railroad? That's the other thing that I want to know. We cited a statute, Your Honor, and I don't have the site in front of me. It's been on the books since 1874. A coal company can, by eminent domain, insert a railroad in any of its property that it finds coal in. So it's not like that was a necessary evil, a necessary requirement that the railroad somehow be contiguous or they could somehow find some way to make the railroad appear. Because by statute, they can do that. They've been able to do that since 1874. And so if you take that into account, there's no reason to give some thought to the railroad needing to be contiguous. The overarching thing, and I keep getting back to this, and the frustrating thing for us from the beginning of this case is if you've got to give meaning and effect to everything, you can't do it with a definite construction. You have to ignore four of those five subsidence clauses in Pierce v. Day. You have to ignore that they knew exactly how to apply those subsidence rights to every parcel. That's what they truly intended because that's exactly what they did with Olmstead and oil and gas, and they did not. That must have been a reason, and more importantly, at the end, they're not more important, but the icing on the cake is the last antecedent rule confirms it. We're going to modify the immediately preceding phrase or clause. There are other things in the briefs. I'll touch on this quickly. They talk about we don't have shallow coal, there's no harm to it, merchantable accommodation, doctors, things like that. Those don't really bear on our motion to parcel summary judgment. It's purely on the construction of the Pierce deeds about subsidence. And as we've demonstrated in our brief, and as the record of this trial court demonstrates, these are all questions of fact. The amicus brief talks about custom and usage, but again, that's parole evidence. And that gets down to the bottom line of what happens here. You can't go back, pull some kind of handwritten modification in September after everybody conveyed the property away to money the waters on a contract we can't find, on modifications we can't find. The Supreme Court tells us we've got to look at that document. What does it say, and what does it mean? And to do that, you can't ignore four of the five subsidence clauses. Not when you look squarely at the face of Homestead and oil and gas that were not weighed. At the end of the day, we're asking this court to reverse the trial court, enter summary judgment in favor of the plaintiffs on this point, and find that the right of subsidence only applies to 12 of the 127 parcels. The defendants are well able to continue to ruin, pill, or mine, but to the extent that they have long-lost mine and subsided our SHALCO, which we've alleged in our plan, as the plaintiffs in this case, then that judgment becomes very relevant with respect to our other claims, and that's why it's been the subject of this motion for partial summary judgment. Thank you, Your Honor. Thank you, Counsel. Appellee, are you ready? Are you going to take and watch the time yourself? Good afternoon, Your Honors, and may it please the court. My name is Joshua Hammack, arguing today on behalf of appellees Williamson, Imogia, and Coole. As the clerk pointed out, I intend to take 15 minutes, and will reserve five for my colleague, John Brine, counsel for our appellee. Your Honors, this case presents a single question. Do the together with clauses in the Pierce deeds apply to all parcels in the series that precede them, as the trial court held, or only to the very last parcel in that series, as appellants contained? Here, text, structure, common sense, and course of performance align to point to a single conclusion, that together with clauses apply equally to all parcels in the above series. Our reading, adopted by the trial court, is the only one that makes sense of that text, structure, and course of performance. It's also the only one that avoids surplusage and absurdity. In addition, again as the trial court held, the doctrine of appurtenant rights compels an identical result. Let's begin, Your Honors, with a point of agreement, that the Pierce deeds themselves are unambiguous. As a result, let's start with the interrelated concept of text and structure. Here again, all parties agree that Pierce deed A is representative of the five deeds at issue, and appellants agree that the together with clauses, as differentiated from the surface option clauses they appear with, in Pierce deed E, I'm sorry, in Pierce deed A, are the same. Counsel, if they're unambiguous and we're all in agreement on that, can we look at the Pierce Amendment? I know Mr. Johnson said no, that's intrinsic evidence, so, you know, that's out the window. Mr. Johnson is incorrect, Your Honor. You can absolutely look at the Pierce Amendment, which is a modification to Pierce deed A, and is in the chain of title for that deed. And I do want to correct something, I believe the record was muddied a bit, because I believe I heard appellant argue that the Pierce Amendment did not amend Pierce deed A, but instead amended a different contract. I would direct the court to volume two of the appellate record, pages 1163 to 1169, and you'll see that the Pierce Amendment references another contract from July of 1912, but modifies parcels 68, 69, 70, 71, and 82 in the deed dated March 12, 1913, which is, in fact, Pierce deed A. So the Pierce Amendment absolutely modified Pierce deed A, is part of the chain of title for those parcels, and can be considered by the court, even if the court agrees that the language is unambiguous. Now, I do want to turn back just for a moment to the fact that those together with clauses everyone agrees appear the same throughout Pierce deed A, so we'll take just the first one that appears after parcel 67. Now, before turning to that language, I want to draw Your Honor's attention to Pierce deed A's granting clause, which conveys, quote, all the full line below the depth of 125 feet from the surface of the following described real estate, unquote, and that's A30 of the appendix. Beforehand, I'll refer to the coal line below that depth as deep coal as the parties have throughout briefing. The deed then contains 67 parcel descriptions, each of which sets out the precise physical contours of the parcels and references how George Roberts came to own an interest in them. Next, as most relevant here, the deed contains its first group of rights clauses, two together with clauses and one surface option clause, and again those appear after parcel 67. These clauses specify the various rights included in the conveyance. The most relevant for our purposes today are the first two rights mentioned in the first together with clause. One, the right to mine, dig, and remove the coal therefrom, and two, the right to dig the entire quantity or a less quantity of said coal at the grantee's option without leaving any support for the overlying strata and without liability for any injury or damage which may result from the mining and removal of said coal. Again, those appear, Your Honors, at appendix A41. These provisions mention the coal and said coal, obviously referring to the same thing, but grammatically those words are referenced to something that comes earlier, an antecedent. The natural question when Your Honors encounter those terms is what coal? What coal are we talking about when we say the coal and said coal? Now, appellants, as you just heard, argue that this together with clause refers only to what they describe as the last antecedent, by which they mean the description of parcel 67. But if you look up at that parcel's description at A40, you'll find it never mentions coal at all. Not a single parcel description ever mentions the term. The parcel descriptions themselves contain no antecedent to the coal or said coal and can shed no light on our question. To find our answer, as the trial court did, we have to return all the way to the granting clause, back at A30 before any parcel descriptions appear where we find the conveyance of all deep coal in, quote, the following described real estate, unquote. Reading the deed as a whole, as the court must, it's apparent the term the coal in the first right of the together with clause, the right to mine, refers to all the deep coal in the series of parcels that makes up the following described real estate in the granting clause. As the trial court held, there's no textual or structural limitation to suggest otherwise. Indeed, structure and text compel that conclusion. Counsel, if I can ask you, Mr. Johnson, he talked about, you know, the drafters included clauses regarding the oil and gas reserve and the homestead exemptions at the foot of each deed, and specified the same was applicable to, for example, parcels 1 through parcel 83. You know, is it reasonable to conclude that if the together with clauses were intended to be applicable to all the parcels, it would have been included in all the parcels, just like these other you know, reservations? To clarify the position that we've taken, your honors, our position is not that the together with clauses apply equally to 1 through 83, right? The position that we have taken, that the trial court adopted, is that the together with clauses that appear after parcel 67 apply to 1 through 67. The ones that appear after 75 apply through 68 through 75, and so on down the line. Now, the difference is each one then has an independent meaning, and the important point, your honors, is while the together with clauses in isolation may appear to be the same, the group of rights clauses, the two together with clause and the surface option clause, differ among the grouping. So 1 through 67 have a surface option clause for $60. 75 has a surface option for $100. 76 for $70. 77 has no surface option, and 83 has a surface option for $75. So the grouping of clauses conveys different rights among those various parcels. They do not apply equally 1 through 83, so putting them at the end makes no sense. If I can turn back, your honor, I want to address the right that is contained in the first together with clause but is the second right. It concerns the right to subside, and it refers to said coal. Now, said coal necessarily refers back to the coal in the first right, which finds its antecedent again in the granting clause. Once again, and by the same analysis, Peersteed A conveys subsidence rights in the entire series of parcels that makes up the following described real estate. That analysis alone is enough to end the inquiry and affirm the trial court's grant of summary judgment to appellee. But there's more. The second together with clause, again at 841, conveys the right of ingress and egress, quote, over the surface of said land above said coal, unquote, and this one is for the purpose of prospecting. Now, appellants have argued that the plurality of lands doesn't matter because singular and plural words can be used interchangeably. In fact, the Peersteeds don't use them interchangeably here. All the together with clauses contain a plural word. All the parcel descriptions contain a singular word. But setting that fact aside, I think the better approach is not to zero in on lands in isolation, but to view it in context. Said land above said coal. Again, given the meaning of said coal, which I just discussed, the phrase must refer to the entire series of parcels that makes up the following described real estate in the granting clause. The surface option that follows the two together with clauses drives home the point. That clause concerns quote, such portion of the surface of the above described real estate, unquote. Again, reading the deed as a whole, it's clear that the above described real estate here and the following described real estate in the granting clause are referring to the same thing. Namely, the entire series of parcels between them. And this conclusion finds further support in the fact that the surface option allowed Pierce to buy his land for various improvements necessary or desirable in quote the mining, refining, draining, marketing, and removing of said coal, unquote. Again, said coal necessarily refers to the entire series. There's simply no antecedent in parcel 67 that can make sense of these textual features. The only available antecedent to the coal and said coal appears in the granting clause. But it's not just text and structure. The party's course of performance confirms that the surface options, which again appear alongside the together with clauses apply to the entire series of parcels above them. As relevant here, the Pierce amendment modified the per acre option price applicable to parcels 68, 69, 70, 71, and 82. None of which is immediately followed by a together with or surface option clause. And yet the parties just six months after agreeing to Pierce deed A thought it necessary to reduce the option price per acre applicable to those parcels. If appellants were correct, there would have been nothing to reduce because there would have been no option price at all. The Pierce amendment makes sense only if the surface option clauses and by necessary extension that together with clauses that appear right alongside them apply to the entire series that precedes them, not just the last one in the series. Now finally there's the common law issue, your honor, of a pertinent rights, which again confirms our approach. Once obtained the right to subside or by the same token, a waiver of the right to subjacent and that right here was created when the coal estate was created. And the only way to terminate that right in a subsequent conveyance, even one that further subdivides the estate is to reserve it expressly. Now all parties agree that George Roberts obtained the right to subside to the surface. The source deed gave him that right. Can I interject one moment? When we talk about the right to subsidence it's my understanding that the long wall mining process did not become common until maybe what 30 years ago? So at the time that the original grant was made, can we presume that the subsidence that they were talking about was the subsidence that would result from pillar or room mining which would be a gradual process if it occurred it would not be the immediate collapse that would jeopardize the surface coal that would ensue from long wall mining. Could you address that? Yes, your honor. So a couple of points there. First of all, as a matter of fact long wall mining, while perhaps not the most common method of mining at the time the Pierce Deeds were signed, existed and was well known. It was being practiced in Illinois as if you look at the briefing, even the citation that appellants point to, a case from 1918, talks about the problems associated with long wall mining being well known. So there was absolutely long wall mining happening in Illinois at the time the Pierce Deeds came into existence. Now setting that fact aside, again I think maybe the better point is the deeds themselves are not ambiguous. The terms they use clearly convey the right to subside. So we don't need to get into the question, which is extrinsic to the deeds entirely, about how common it was for long wall mining versus room and pillar mining neither of which is mentioned anywhere in any of the Pierce Deeds. Well my question it goes to the fact that if the grantor was intent on maintaining a right to mine the surface coal, if long wall mining was something that would really jeopardize that opportunity why wouldn't there be some provision of the contract to basically make sure that that integrity to have the opportunity to mine the surface coal would be maintained? So again I think a couple of points your honor. First there's no mention anywhere of surface coal or any coal except for the deep coal, the coal that lies below a depth of 125 feet. As a matter of fact, as you review the record in this case there's an enormous dispute over whether any shallow coal even exists at all, whether it's mineable and so on. So those are kind of open questions that I think this question kind of gets into. Why would he convey this right that related to shallow coal if it were so valuable? Well that's a factual question that unfortunately the Supreme Court did not resolve. It's not clear that it was a valuable right or that it had any value at all in fact. But I think again the more important point your honor, turning back to the language and structure of the deeds themselves, is that the right to subside appears in the deed and it's unlimited. There's no limitation based on a particular method of mining that appears in the deed. Counsel your time is up if you wanted to save it or how you wanted to work it, go ahead. Your appellee can go on if he wants to. If I could just for a minute, I'm sorry your honor. You're taking your own time, go ahead. I just want to say really quickly that the right to mine, which appellants argue conveys automatically, and the right to subside, which would convey automatically as an impertinent right, side by side in the deed. Indeed as part of the same sentence. There's no reason to treat them differently and the fact is either way, in pure construction or relying on principle, appellees have a right to subside every parcel just like appellants concede we have a right to mine every parcel. For these reasons your honors and for the additional reasons in our brief, the trial court's decision to grant summary judgment to appellees should be affirmed. I simply thank your honors for your time and attention. Counsel may proceed now. Thank you. May it please the court and esteemed counsel. I represent Independence Land Company and WPP. Some of the coal in question and leases that coal to Williamson Energy our co-defendant. In many respects our positions are the same as Williamson Energy counsel just presented. But I do wish to emphasize a few things. First I'd like to respond to Justice Wharton's question. As we noted in our brief, long haul mining has been around in Illinois since about 1874. At the time of these deeds, 1914 mining practice survey, which is the year that ended in June 1912, there were 36 long haul mines in Illinois producing over 5 million tons a year. So it was very common. The coal men who did these deeds, both Pierce and Roberts, were well aware that long haul mining may be used by the coal owner. Secondly I'd like to respond to esteemed counsel Mr. Johnson's question. He said there were five different insertions after these descriptions. And he asked why insert the additional forecauses? Well the answer is simple. It's because those additional forecauses are all different. The rights that went with the coal in these deeds were different. So 1-67 used the same deed form which had the same coal rights. And the rights that were described in all of those deeds, 1-67, then that follows 1-67. And then as he's 68-75, they used a different form. So that is the reason. I want to, I don't have much time, but I want to go in emphasize this. In my view, the case is really, should end on the fact that the subsidence right is the covenant that runs with the land. And just real briefly, I want to give some basics on this. For example, a residential lot which everyone's familiar with, even if you're not familiar with the coal industry. If you buy a lot, it comes with right of access, utility easements, right to enforce restrictive covenants like your neighbor can build a store next door, open a store, maybe have access to common areas. All these rights were in instruments prior to your deed. When you get your deed, it may say only Lot 1 of Cherry Hill Subdivision. That's all it says. But all these rights and obligations still go with the lot. They run with the land. Your neighbor still cannot open a store, even though he can't say, well, it wasn't in my deed, because it's in his chain of title. Let's take a look at the original grant in this case. This is from the owner of the coal and the overlying strata. The grant in each severance deed was for coal and the right to remove all of said coal without leaving any support for the overlying strata. This is a covenant between one owner of real estate, the owner of the overlying strata, and another owner of real estate, the owner of coal in place. Since this concerns real estate, it runs with the land. Or to put it in other terms, it goes with the real estate. This has been established for centuries in common law and is so well established, you don't see a lot of cases. But in 1978, this 5th District Appellate Court in Parrish v. City of Carbondale repeated this long established law. Quote, if a covenant concerns the land and the enjoyment of it, its benefits or obligations passes with ownership. End quote. So the benefit of this covenant goes with ownership of the coal, and the obligations of the covenant and the overlying strata. The same in 2002 said that an appurtenance quote, runs with the land, passes by conveyance of the land, even without being mentioned in the instrument of transfer. End quote. That's Roquette v. Hoyer. We've cited all these cases in our brief. This has been repeatedly held by the Elm Supreme Court, appellate courts, and really courts all throughout the United States. It is that fundamental. It doesn't matter. They could have said nothing about subsidence rights or any other rights. And in fact, many coal conveyances do. They don't say anything. Once the right is established, just like with your lot in Cherry Hills, then all you have to do is convey real estate, and all these appurtenant rights go with it. So my clients own the coal, and we submit that it's dispositive of this case. They own the coal, and they own all the rights that go with it. And I see I'm running out of time, but I would ask the court on behalf of my client, the coal owner, to consider the doctrine of accommodation and the rule of reason, because it's something that we believe that there should be an expansion or an application of existing law to this situation. Thank you very much. And we'll just add a few minutes to make up for the overtime that was taken by the appellee, if you need it. Mr. Johnson, you're on mute. Oh, I'm sorry. Can you not hear me? Mr. Johnson, can you hear me? He just can't speak right now. We've got to unmute him. You'll have to straighten out on your end. I can't do it here. We still can't hear you. It just popped up. Can you hear me now, Justice Welch? Got it now. Okay. All right, great. Thank you. I would be surprised if we got through the day without somebody, at least on our end. That was us. Let me address the question that Justice Overstreet asked of Williamson Energy's attorney, which was, can we consider modification in lieu of the bright line of the Supreme Court? And the answer was, yeah, you can consider the modification. The problem with that is, again, there's a difference between parole evidence used to modify a document like something that was a waiver issue or because it's based on mutual mistake of fact versus any evidence that tried the Supreme Court's made clear we're not going to permit parole evidence to construe a document. None of the defendants have pled mistake of fact, fraud, waiver, any kind of grounds that would give rise to considering this modification. Not to mention, this thing is a handwritten document purporting to amend an agreement that we can't find about other modifications we can't find that's dated ... That's exactly the kind of problem with trying to drag in this parole evidence to try to discern a meeting of a document that's otherwise clear and easy to discern from the application of the four corners rule. You're saying that's true. Your point, you're arguing, is true even though opposing counsel said yes, but it's in the title. Well, that's a source deed. That was the other thing they argued was source deeds. We cited the cases in our brief, Judge. Source deeds are also parole evidence. You can't bring a source deed in to modify the deed that's granted. You can refer back to it and say, okay, this is the source of the title, but everybody's deed may vary from grantor to grantee. That doesn't fix their problem. They still have the problem that the source of title still has to be real. These people didn't own it when this handwritten document was done six months after the deed had been conveyed away from Pierce. The other thing was I heard you asked Justice Overstreet the question about the Homestead and the oil and gas. It would have been so easy to have just simply left the last subsidence clause in there, which was right next to the oil and gas and waiver, and said it applies to everything. We wouldn't be here. The fact that those other four are scattered through there at 67, 76, and so forth is why we're here because it's clear they had to have a purpose, and they've not addressed that. The other thing, when I look at the questions, this was Wharton asked a question about the common sense associated with the type of mining. I submit that that question's well taken because it does demonstrate the common sense involved here. Roberts did not convey away his shallow coal. He kept it. He therefore reasonably did not want to convey the right to destroy what he kept and only the five parcels. It made no sense for him to do otherwise, and that question begs that answer, which is Roberts would not have, on one hand, kept 125 feet of shallow coal and granted the right to totally destroy it with longwall mining and total subsidence in anything other than the five parcels that are there. Last thing I'll address is the issue of appurtenance. Mr. Ryan is confused. Again, surface and covenants run with the land, with the subdivision, nothing can be further from the truth here. No question that if I own a piece of property and I grant the mineral to one of these coal companies and I later convey it away, and I give the right to society, and I convey that away to my partner, my partner is the surface. That doesn't apply to mineral interest. In this case, we had two separate mineral interests, shallow coal and deep coal, and as a consequence, that right of subjacent sublateral support is absolute. You can only go back to a covenant once it's established. It's an important note here. Roberts never conveyed away the right to subjacent sublateral support on any of his parcels other than the five that expressly had that waiver provision in them. The coal companies were fine to go ahead and ruin and pill that all they wanted to, but when they stepped in and started longwall mining and subsiding our shallow coal, they trespassed upon us because those deeds are clear when you look at just the four corners of them, that right of subsidence only was tethered to those parcels, the five parcels for instance, Pierce D. Day. And at the end of the day, that's a they're wanting us to speculate. What about this modification? It kind of says this and kind of talks about this. I heard counsel also talking about the plural shamer. If that's the case, you've got a serious argument that each one of these together with clauses are virtually the same. I totally disagree with my colleague, Mr. Ryan. If you look at these, and we did in our inquiry, they're virtually identical. There might be a typo here and there, but these subsidence clauses are virtually identical. There's very little difference in them. And that's important because we can't speculate about what somebody would have thought. We can only look at the document if it's unambiguous. That rule has to be there for a reason. That way we've got stability in our titles. We're not going back a hundred years and trying to drag in a modification that was signed by people who no longer own the property as use for what the document that was otherwise clear and ambiguous was supposed to mean. And for those reasons, Your Honor, we ask that the court reverse the trial court, enter the judgment in favor of the plaintiff's request and are briefed. Thank you again for your time this afternoon. I thank you for your oral arguments and you'll be excused and a ruling will come down in due course. Thank you, Your Honor. Good day. Good day, fellow counsel.